IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| PRODUCTION DESIGN SERVICES, INC, | : | |
| Plaintiff, | : | Case No. 3:13-cv-338 |
| v. | : | |
| SUTHERLAND-SCHULTZ, LTD. | : | JUDGE WALTER H. RICE |
| Defendant. | : | |

DECISION AND ENTRY OVERRULING, WITHOUT PREJUDICE TO RENEWAL, DEFENDANT'S MOTION TO BIFURCATE (DOC. #14)

Pending before the Court is Defendant's Motion to Bifurcate (Doc. #14) under Fed. R. Civ. P. 42(b), seeking to bifurcate Plaintiff's claim for attorney fees from the liability and damages phase of the trial. For the reasons set forth below, the motion is OVERRULED WITHOUT PREJUDICE.

I. **FACTUAL AND PROCEDURAL BACKGROUND**[1]

Plaintiff Production Design Services, Inc. ("Plaintiff" or "PDSI") is an Ohio corporation with its principal place of business in West Carrollton, Ohio. The company designs and manufactures specialty equipment, including robotic

---

[1] The factual background presents the facts that appear undisputed, based upon the admissions that Defendant set forth in its Answer in response to Plaintiff's Complaint. Where a fact is disputed, the Court so notes.

systems, manufacturing control process instruments, machine tools, dies, jigs, fixtures and accessories. It also provides industrial engineers, engineering services, and technical staffing. Doc. #3, Compl. ¶ 1; Doc. #5, Answer ¶ 1.

Defendant Sutherland-Schultz, Ltd. ("Defendant" or "S-S") is a Canadian corporation located in Ontario, Canada, that provides industrial, commercial and institutional construction and installation services. S-S provides construction and installation services at Honda facilities in Alliston, Ontario, where Honda produces various models of its Acura vehicle. Doc. #3, Compl. ¶ 2; Doc. #5, Answer ¶ 2.

On January 4, 2013, pursuant to a quotation provided by PDSI and a purchase order from S-S, the parties contracted for a dual lane conveyor system (the "Conveyor Project") to be installed at a Honda plant in Alliston, Ontario. The purchase price of the Conveyor Project was $457,000, and was to be paid in the following installments: 30% with the purchase order, 60% upon delivery, and 10% upon final acceptance. Doc. #3, Compl. ¶ 4; Doc. #5, Answer ¶ 4 & Ex. A.

Some of the progress payments were made, but the parties dispute whether S-S owes any additional balance to PDSI. PDSI alleges that it received the initial 30% progress payment of $137,100, and a partial payment of the 60% upon delivery payment in the amount of $149,931.47. However, PDSI alleges that in addition to the remaining balance of $169,968.53 on the original purchase order, it incurred additional costs and expenses due to improper installation of components by S-S in the amount of $27,533, bringing the total amount owed to

2

$197,501.53. Doc. #3, Compl. ¶¶ 5 -7. S-S denies that any additional amounts are owed, alleging that the Conveyor Project was defective and did not conform to the contracted specifications, and that the damage caused by any improper installation was attributable to PDSI's subcontractor, SEW Eurodrive. Doc. #5, Answer ¶¶ 5-7.

On August 27, 2013, PDSI brought claims for breach of contract, quantum meruit and unjust enrichment against S-S in the Montgomery County, Ohio, Court of Common Pleas. Doc. #3. In addition to contract damages and compensation for lost revenue, PDSI sought recovery of reasonable attorneys' fees and costs. *Id.* at 6. Invoking federal subject matter jurisdiction based on the parties' diverse citizenship, S-S removed the case to this Court on October 1, 2013. Doc. #1.

On July 3, 2014, S-S filed a Motion to Bifurcate under Fed. R. Civ. P. 42(b), seeking to bifurcate PDSI's claim for attorney fees from the liability and damages phase of the trial. Doc. #14. Therein, S-S points out that PDSI's claim for attorneys' fees arises under the contract. PDSI must, therefore, prevail on its contract claim as a prerequisite to an award of attorneys' fees. Because the issue of attorneys' fees would require the consideration of evidence and witnesses unrelated to the issue of liability, S-S argues that it would be more expeditious and less confusing to a jury to bifurcate the issues.

PDSI filed a Memorandum in Opposition on July 24, 2013. Doc. #15. Therein, PDSI argues that S-S has "mischaracterized" the issue of attorneys' fees

3

because the contract does not make them contingent upon PDSI being a prevailing party in the contract dispute. PDSI disputes the assertion that additional witnesses and evidence would unduly lengthen the trial on the merits or confuse the jury, suggesting instead that "the adjudication of all the issues in one trial would promote the goals of convenience and economy," with no prejudice to S-S. According to PDSI, the issue of bifurcation is premature. The Court has yet to determine whether it is entitled to attorneys' fees under the contract, and therefore, the evidence relevant to the issue of fees is only "speculation." Based on the foregoing, PDSI urges the Court to overrule the motion.

On August 7, 2014, S-S filed a Reply in Support of its Motion to Bifurcate. Doc. #16. Therein, S-S claims to be surprised by PDSI's opposition to bifurcation. S-S interprets the relevant clause of the contract that provides for attorneys' fees to require PDSI to prevail on the merits of its claim, as well as to show evidence that it was "necessary" for PDSI to bring its claim. S-S believes this evidence should not be introduced until PDSI has proved its case. S-S agrees with PDSI that the Court should decide the enforceability of the attorneys' fee provision of the contract, and takes the position that it is not enforceable. Whatever determination the Court makes with regard to the enforceability of the clause, or whether the issue is tried to the jury or the Court, S-S argues that it will involve additional evidence that is not relevant to the merits. Thus, S-S argues that the trial on liability will be expedited by granting its request to bifurcate.

4

## II. ANALYSIS

Rule 42(b) of the Federal Rules of Civil Procedure allows that, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." "Only one of these criteria need be met to justify bifurcation." *Saxion v. Titan-C-Mfg., Inc.*, 86 F.3d 553, 556 (6th Cir. 1996) (citing *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1177 (7th Cir.)). "A decision ordering bifurcation is dependent on the facts and circumstances of each case." *Id.* (citing *Idzojtic v. Penn. R.R. Co.*, 456F.2d 1228 (3rd Cir. 1972)).

After consideration of the parties' arguments for and against bifurcation, the Court concludes that it would be premature to make a definitive ruling on the issue. Although S-S is the party requesting bifurcation of the issue of attorneys' fees from PDSI's other claims, it has also indicated in intention to challenge the enforceability of the attorneys' fee provision before trial. In its Reply Brief, S-S states that "the Court may decide, and should decide, prior to trial the enforceability of Plaintiff's contractual attempt to shift fees to Defendant. In fact, Defendant asserts that such a provision is not enforceable." Doc. #16 at 2 (citing *The Scotts Co. v. Cent. Garden & Pet Co.*, 256 F. Supp. 2d 734 (S.D. Ohio 2003)). If the Court determines that the fee-shifting clause of the parties' contract is unenforceable, PDSI will not be entitled to attorneys' fees, and bifurcating the

5

issue from that of contractual liability will become moot. On the other hand, if the Court determines that the clause is enforceable, it will also at that time become necessary to resolve the issue of bifurcation. The Court does not believe that the interests of convenience, expeditiousness, or economy that are to be considered under Fed. R. Civ. P. 42(b) would be served by ruling on bifurcation of the attorneys' fees issue when S-S has clearly signaled its intention to challenge PDSI's right to recover them.[2] For these reasons, the Motion to Bifurcate is OVERRULED WITHOUT PREJUDICE, subject to reconsideration after a future ruling on the enforceability of the attorneys' fee clause in the parties' contract.

Date: November 20, 2014

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

---

[2] It is noted that convenience, economy and expeditiousness would have been better served if S-S had asked the Court to address the issue of the enforceability of the attorneys' fee clause before moving for bifurcation.

6