IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PRODUCTION DESIGN
SERVICES, INC.,

   Plaintiff,

  v.

SUTHERLAND-SCHULTZ, LTD.

   Defendant.

:
:
:
:
:

Case No. 3:13-cv-338

JUDGE WALTER H. RICE

---

DECISION AND ENTRY OVERRULING, WITHOUT PREJUDICE TO RENEWAL, THE MOTION IN LIMINE (DOC. #27) FILED BY DEFENDANT SUTHERLAND-SCHULTZ, LTD.; ORDER TO THE PARTIES

---

Pending before the Court is the Motion in Limine (Doc. #27) filed by Defendant Sutherland-Shultz, Ltd. ("Defendant" or "S-S"), seeking an order that prohibits Plaintiff Production Design Services, Inc. ("Plaintiff" or "PDSI"), from introducing: 1) evidence related to its claim for attorneys' fees and 2) depositions of available witnesses in lieu testimony at trial.  For the reasons set forth below, the motion is OVERRULED without prejudice, and may be renewed after the Court rules on the disputed issue of the interpretation of the parties' contract.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**[1]

PDSI is an Ohio corporation with its principal place of business in West Carrollton, Ohio. The company designs and manufactures specialty equipment, including robotic systems, manufacturing control process instruments, machine tools, dies, jigs, fixtures and accessories. It also provides industrial engineers, engineering services, and technical staffing. Compl. ¶ 1 (Doc. #3 at 1); Answer ¶ 1 (Doc. #5 at 1).

S-S is a Canadian corporation located in Ontario, Canada, that provides industrial, commercial and institutional construction and installation services. S-S provides construction and installation services at Honda facilities in Alliston, Ontario, where Honda produces various models of its Acura vehicle. Compl. ¶ 2 (Doc. #3 at 2); Answer ¶ 2 (Doc. #5 at 1).

On January 4, 2013, pursuant to a quotation provided by PDSI and a purchase order from S-S, the parties contracted for a dual lane conveyor system (the "Conveyor Project") to be installed at the Honda plant in Alliston, Ontario. The purchase price of the Conveyor Project was $457,000, and was to be paid in the following installments: 30% with the purchase order, 60% upon delivery, and 10% upon final acceptance. Compl. ¶ 4 (Doc. #3 at 2); Answer ¶ 4 & Ex. A (Doc. #5 at 1 & 9).

---

[1] Unless otherwise indicated, the following facts appear to be undisputed, based on comparison of the allegations in Plaintiff's Complaint with the admissions in Defendant's Answer.

2

Some of the progress payments were made, but the parties dispute whether S-S owes any additional balance to PDSI. PDSI alleges that it received the initial 30% progress payment of $137,100, and a partial payment of the 60% upon delivery payment in the amount of $149,931.47. However, PDSI alleges that apart from the remaining balance of $169,968.53 on the original purchase order, it incurred additional costs and expenses due to the improper installation of components by S-S in the amount of $27,533, bringing the total amount owed to $197,501.53. Compl. ¶¶ 5 -7 (Doc. #3 at 2-3). S-S denies owing any additional amount and alleges that the Conveyor Project was defective, did not conform to the contracted specifications, and any damage from improper installation was caused by PDSI's subcontractor, SEW Eurodrive. Answer ¶¶ 5-7 (Doc. #5 at 2-3).

On August 27, 2013, PDSI brought claims for breach of contract, quantum meruit and unjust enrichment against S-S in the Montgomery County, Ohio, Court of Common Pleas. Doc. #3. PDSI sought recovery of contract damages, compensation for lost revenue, reasonable attorneys' fees and costs. *Id.* at 6. Invoking federal subject matter jurisdiction based on the parties' diverse citizenship, S-S removed the case to this Court on October 1, 2013. Doc. #1.

On July 3, 2014, S-S filed a Motion to Bifurcate under Fed. R. Civ. P. 42(b), seeking to bifurcate PDSI's claim for attorney fees from the liability and damages phase of the trial. Doc. #14.

3

In its Decision and Entry of November 21, 2014, the Court overruled S-S's Motion to Bifurcate without prejudice. Doc. #21. The Court noted that S-S had indicated its intention to challenge the enforceability of the fee-shifting provision of the parties' contract, and the resolution of that legal issue would determine whether bifurcation would be appropriate:

> If the Court determines that the fee-shifting clause of the parties' contract is unenforceable, PDSI will not be entitled to attorneys' fees, and bifurcating the issue from that of contractual liability will become moot. On the other hand, if the Court determines that the clause is enforceable, it will also at that time become necessary to resolve the issue of bifurcation. The Court does not believe that the interests of convenience, expeditiousness, or economy that are to be considered under Fed. R. Civ. P. 42(b) would be served by ruling on bifurcation of the attorneys' fees issue when S-S has clearly signaled its intention to challenge PDSI's right to recover them.

On November 21, 2014, PDSI filed a Motion to Amend its Complaint, seeking to add a statutory claim for attorneys' fees under Ohio's Prompt Payment Statute, Ohio Rev. Code § 4113.61. Doc. #22. On January 28, 2015, however, PDSI filed a Notice of Withdrawal of the aforementioned motion, stating that because it agreed with S-S's position that the law of Ontario, Canada, applied to this action, amending its Complaint to include the Ohio claim would be futile. Doc. #26.

On February 3, 2015, S-S filed a Motion in Limine, seeking to prevent PDSI from introducing evidence of attorneys' fees or the depositions of available witnesses at trial. Doc. #27.

4

On February 10, 2015, the parties jointly moved the Court to continue the March 2, 2015, trial date. Doc. #28. The Court granted the motion on March 3, 2015, and set a new trial date of August 24, 2015. Doc. #30.

On February 25, 2015, PDSI filed a Memorandum in Opposition to Defendant's Motion in Limine. Doc. #29. Therein, PDSI argued that it would be improper for the Court to determine the enforceability of the attorneys' fees provision when considering a request for an evidentiary ruling, and that it would be premature to rule on the issue of the admissibility of depositions at trial.

On March 18, 2015, S-S filed a Reply Memorandum in Support of its Motion in Limine. Doc. #31. Therein, S-S argued that PDSI should be precluded from introducing evidence regarding attorneys' fees because it had failed to produce discovery relevant to this claim.[2] However, S-S agreed that the enforceability of the contractual clause providing for attorneys' fee is an issue that must be decided before any evidence regarding fees may be introduced at trial.

II.     **ANALYSIS**

Under Rule 402 of the Federal Rules of Evidence, relevant evidence is admissible unless another rule or law renders it inadmissible. For example, Rule 403 allows the exclusion of "relevant evidence if its probative value is substantially

---

[2] The Notice of Production of Redacted Invoices filed by PDSI on April 16, 2015, may have mooted the issue of PDSI's production of evidence related to attorneys' fees. Doc. #32. At any rate, the Court notes that S-S never sought this evidence by filing a Motion to Compel during the discovery phase of this litigation.

outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Although S-S has not specifically cited the basis for its motion, it argues that evidence of attorneys' fees is "irrelevant," and its admission would both "confuse the jury" and cause it prejudice. Doc. #27 at 2. If these arguments prove true, Rule 402 and Rule 403 would authorize the exclusion of the evidence in question. Thus, the Court construes S-S's Motion in Limine as one arising under Rule 402 and Rule 403 of the Federal Rules of Evidence.

"A motion in limine is 'any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered.'" *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (quoting *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984)). "The purpose of an in limine motion is 'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (quoting *Banque Hypothecaire Du Canton De Geneve v. Union Mines*, 652 F. Supp. 1400, 1401 (D.Md.1987)).

However, a motion in limine is not the appropriate procedural vehicle for resolving a disputed question of law that a party should have raised in a motion for summary judgment or a motion for judgment on the pleadings. *See Louzon*, 718 F.3d at 561. In *Louzon*, the Sixth Circuit reversed a district court's ruling on a

6

motion in limine that the defendant had filed to exclude evidence of the comparators offered by the plaintiff to prove his employment discrimination claim. *Id.* at 567. The Sixth Circuit noted that the motion's "true nature" was "evident from the first page," where the defendant had argued that, as a matter of law, the comparators were not properly comparable to the plaintiff. *Id*. at 562. Resolving that issue "require[d] a summary-judgment analysis." *Id.* The defendant argued that the evidence was irrelevant because evidence of non-comparable employees did not make it more or less probable that the plaintiff had experienced discrimination. *Id.* at 562-63. The Sixth Circuit rejected this argument, stating that it:

> rests entirely on the presumption that [the plaintiff] would not be able to make out a prima facie case of discrimination, which if true would render null the need for any evidentiary rulings. Additionally, if these tactics were sufficient, a litigant could raise any matter in limine, as long as he included the duplicative argument that the evidence relating to the matter at issue is irrelevant. Where, as here, the motion in limine is no more than a rephrased summary-judgment motion, the motion should not be considered.

*Id.* at 563.

Here, S-S's argument in support of excluding evidence of attorneys' fees depends entirely upon its interpretation of the parties' contract. In its Memorandum, S-S argues:

> The attorney fees provision was not included in the Purchase Order and therefore is not part of the contract. As such, Plaintiff is not entitled to recover its attorney fees even if it prevails on its breach of contract claim. Therefore, any evidence relating to Plaintiff's claim for

7

>  attorney fees is irrelevant and would confuse the jury on the issue of damages.

Doc. #27 at 2.

This argument "rests entirely on the presumption" that the fee-shifting provision is not enforceable, which is a question of law that the parties dispute. *Louzon*, 718 F.3d at 563. Only by relying on its interpretation of the contract can S-S assert that evidence related to attorneys' fees is "inadmissible." However, as *Louzon* makes clear, the Court cannot resolve a disputed issue of law by ruling on a motion in limine that was ostensibly brought for an evidentiary purpose.

The parties have been aware that there is a dispute over the interpretation of the provision of their contract that purportedly authorizes PDSI's attorney fees since the inception of this litigation. PDSI alleged in its Complaint that "[p]rovisions of the PDSI quotation that were not modified and were accepted by S-S include the requirement that . . . S-S [] pay PDSI for all costs, attorney fees and interest incurred in connection with any legal action required to be instituted by PDSI for collection." Compl. ¶ 6 (Doc. #3 at 3). In its Answer, S-S "specifically denie[d] that . . . Plaintiff PDSI is, or ever will be, entitled to any costs, attorneys' fees or interest," and stated that "the legal construction and enforceability of these documents will be determined by this Court." Answer ¶ 6 (Doc. #5 at 2). When litigating the Motion to Bifurcate, both parties referenced the disputed contract language and the necessity of having the Court interpret it. Pl.'s Resp. to Def.'s Motion to Bifurcate, Doc. #15 at 2 ("The issue as to whether

8

PDSI is contractually entitled to attorney fees is initially for the Court to decide"); Def.'s Reply, Doc. #16 at 2 ("Defendant agrees that the Court may decide, and should decide, prior to trial the enforceability of Plaintiff's contractual attempt to shift fees to Defendant"). The Court assumed that some affirmative request from the parties to resolve the issue would be forthcoming when it stated that it did "not believe that the interests of convenience, expeditiousness, or economy that are to be considered under Fed. R. Civ. P. 42(b) would be served by ruling on bifurcation of the attorneys' fees issue when S-S has clearly signaled its intention to challenge PDSI's right to recover them," and overruled the motion without prejudice, "subject to reconsideration after a future ruling on the enforceability of the attorneys' fee clause in the parties' contract." Doc. #21 at 6. Nevertheless, the parties litigated this case through the end of the discovery period and allowed the November 3, 2014, summary judgment deadline to pass without seeking any such ruling from the Court.[3] As discussed, the Court may not resolve an issue of contract interpretation in the guise of an evidentiary ruling. *Louzon*, 718 F.3d at 562-63; *see also Ohio Oil Gathering Corp. III v. Welding, Inc.*, No. 2:09-CV-782, 2010 WL 5135999, at *3 (S.D. Ohio Dec. 9, 2010) (overruling motion in limine that was "more a motion for judgment on the pleadings or for summary judgment on the second claim of the Complaint" because "[t]he time for filing such dispositive motions ha[d] long closed . . . and Defendant cannot evade this Court's

---

[3] PDSI did file a Motion for Summary Judgment on August 28, 2014 (Doc. #17), but subsequently withdrew the motion (Doc. #19). In any case, the motion did not raise the issue of interpreting the attorneys' fee provision in the parties' contract.

9

summary judgment deadline simply by captioning its dispositive motion in a creative manner"). So that the issue may finally be resolved, the Court will order the parties to brief their arguments in support of their respective interpretations of the contract, as set forth below. S-S may renew its Motion in Limine after the Court issues its ruling. Until then, however, the motion is overruled without prejudice.

Finally, S-S has moved the Court for an order preventing PDSI from introducing depositions in lieu of the testimony of witnesses who are available to testify at trial. Given that trial is not scheduled to commence for another four months, and that PDSI has not yet moved the Court under Fed. R. Civ. P. 32(a)(4) to introduce depositions in lieu of unavailable witnesses, any such order would be based only on speculation about PDSI's future intentions. Consideration of this issue is, therefore, premature. Accordingly, S-S's Motion in Limine is overruled without prejudice on these grounds as well.

### III. CONCLUSION

For the reasons set forth above, S-S's Motion in Limine (Doc. #27) is OVERRULED without prejudice. The Court finds that the necessity of ruling on the disputed issue of the interpretation of the parties' contract constitutes "good cause" under Fed. R. Civ. P. 16(b)(4) for modifying the scheduling order. Accordingly, the Court modifies the dates for summary judgment briefing and ORDERS that the parties file simultaneous Cross-Motions for Summary Judgment

on June 1, 2015. Response Memoranda are due twenty-one days thereafter, and no Reply Memoranda shall be filed. After the Court rules on the aforementioned motions, S-S may renew its Motion in Limine.

Date: April 23, 2015

_____
WALTER H. RICE
UNITED STATES DISTRICT JUDGE