IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PRODUCTION DESIGN
SERVICES, INC., :

    Plaintiff,                        Case No. 3:13-cv-338
: 
v.

SUTHERLAND-SCHULTZ, LTD.        JUDGE WALTER H. RICE
:
    Defendant.

---

DECISION AND ENTRY OVERRULING PLAINTIFF'S MOTION TO
STRIKE WITNESSES AND LIMIT WITNESS TESTIMONY (DOC. #43)

---

Pending before the Court is the Motion to Strike Witnesses and Limit Witness Testimony (hereinafter, "Motion to Strike") (Doc. #43) filed by Plaintiff Production Design Services, Inc. ("Plaintiff" or "PDSI"), seeking an order from the Court that 1) strikes the lay witnesses identified by Defendant Sutherland-Shultz, Ltd. ("Defendant" or "S-S") in Appendix B of the Joint Final Pretrial Order; and 2) limits the scope of the testimony of S-S's expert witnesses to their disclosed opinions and the basis therefore.  For the reasons set forth below, the motion is OVERRULED.

I.      **FACTUAL BACKGROUND**

PDSI is an Ohio corporation with its principal place of business in West Carrollton, Ohio.  The company designs and manufactures specialty equipment, including robotic systems, manufacturing control process instruments, machine tools, dies, jigs, fixtures and accessories.  It also provides industrial engineers, engineering services, and technical staffing.  Compl. ¶ 1 (Doc. #3 at 1); Answer ¶ 1 (Doc. #5 at 1).

S-S is a Canadian corporation located in Ontario, Canada, that provides industrial, commercial and institutional construction and installation services.  S-S provides construction and installation services at Honda facilities in Alliston, Ontario, where Honda produces various models of its Acura vehicle.  Compl. ¶ 2 (Doc. #3 at 2); Answer ¶ 2 (Doc. #5 at 1).

On January 4, 2013, pursuant to a quotation provided by PDSI and a purchase order from S-S, the parties contracted for a dual lane conveyor system (the "Conveyor Project") to be installed at the Honda plant in Alliston, Ontario.  The purchase price of the Conveyor Project was $457,000, and was to be paid in the following installments:  30% with the purchase order, 60% upon delivery, and 10% upon final acceptance.  Compl. ¶ 4 (Doc. #3 at 2); Answer ¶ 4 & Ex. A (Doc. #5 at 1 & 9).

Some of the progress payments were made, but the parties dispute whether S-S owes any additional balance to PDSI.  PDSI alleges that it received the initial

2

30% progress payment of $137,100, and a partial payment of the 60% upon delivery payment in the amount of $149,931.47. However, PDSI alleges that apart from the remaining balance of $169,968.53 on the original purchase order, it incurred additional costs and expenses due to the improper installation of components by S-S in the amount of $27,533, bringing the total amount owed to $197,501.53. Compl. ¶¶ 5 -7 (Doc. #3 at 2-3). S-S denies owing any additional amount and alleges that the Conveyor Project was defective, did not conform to the contracted specifications, and any damage from improper installation was caused by PDSI's subcontractor, SEW Eurodrive. Answer ¶¶ 5-7 (Doc. #5 at 2-3).

II.     **REVELVANT PROCEDURAL BACKGROUND**

On August 27, 2013, PDSI brought claims for breach of contract, quantum meruit and unjust enrichment against S-S in the Montgomery County, Ohio, Court of Common Pleas. Doc. #3. PDSI sought recovery of contract damages, compensation for lost revenue, reasonable attorneys' fees and costs. *Id.* at 6. Invoking federal subject matter jurisdiction based on the parties' diverse citizenship, S-S removed the case to this Court on October 1, 2013. Doc. #1.

On November 14, 2013, the Court entered a Scheduling Order that set forth a number of procedural deadlines. Doc. #8. The parties were given until January 29, 2014, to identify the lay witnesses they intended to call at trial. *Id.* at 2. The deadline for identification of expert witnesses, whether or not they were experts required to prepare reports, was May 29, 2014. *Id.* Trial was set for March 2,

2015. *Id.* at 3. The Court later reset the trial date to August 24, 2015. Doc. #30.

On July 28, 2015, the Court held a telephone conference with the parties' counsel and set a deadline of August 13, 2015, for the filing of their Joint Final Pretrial Order, which the parties timely filed. Doc. #41. On August 14, 2015, the parties filed a Motion to Amend the Joint Final Pretrial Order, based on the inadvertent omission of several items in the original filing. Doc. #42. The Court sustained the motion on August 18, 2015, and the amended version of the document has now been filed. Doc. #61.

In the parties' proposed Joint Final Pretrial Order, S-S identifies the following persons as the expert witnesses it intends to call at trial: Scott R. Kelly, James L. Thomas, Craig Kenny, and Michael Birmingham.[1] Doc. #61 at 5. The same persons are also listed in Appendix B, S-S's list of lay witnesses. *Id.* at 8. Appendix B also identifies Tony Davidson as a lay witness. *Id.*

On August 17, 2015, PDSI filed its Motion to Strike Witnesses and Limit Witness Testimony. Doc. #43. According to PDSI, because S-S did not file a lay witness disclosure at all (much less comply with the Scheduling Order's January 29, 2014, deadline), and did not disclose its list of lay witnesses until August 12, 2015, when it provided an initial draft of the Joint Final Pretrial Order, PDSI "took no lay witness depositions." *Id.* at 2. Instead, it took the depositions of Scott R.

---

[1] S-S also identifies Kevin E. Richards as an expert witness, but it does not also list him as a lay witness in Appendix B.

4

Kelly, Michael Birmingham, James L. Thomas, and Craig Kenny only "as experts," based on a previous disclosure by S-S. Thus, "the depositions of these witnesses were limited to the subject of their expert testimony," and allowing them to testify in any other capacity would cause PDSI "severe and manifest" prejudice. *Id.* at 2-3. Furthermore, S-S never identified Tony Davidson as a lay witness or an expert witness until listing him as a lay witness in the Joint Final Pretrial Order, and PDSI accordingly never took his deposition at all. *Id.* at 2. Because he is a former PDSI employee that allegedly left "with animosity," PDSI believes that Mr. Davidson is "embittered" and "would seek retribution against the company if given the opportunity." *Id.* at n.1. Citing the Court's General Order No. 1, which requires timely identification of witnesses and only allows for parties to supplement their lists of intended witnesses after disclosure based on a showing of good cause, PDSI requests that the Court strike Appendix B from the Joint Pretrial Order and limit the scope of the testimony of any witnesses listed there to expert testimony. *Id.* at 2-4.

On August 18, 2015, S-S filed a Memorandum in Opposition to Plaintiff's Motion to Strike Witnesses and Limit Witness Testimony, in which it made the following arguments against PDSI's motion. Doc. #60. First, S-S identified the witnesses in question both in its initial disclosures under Rule 26(a)(1) and in response to PDSI's interrogatories, and PDSI identified all of them except Scott Kelly in the January 29, 2014, Disclosure of Lay Witnesses that it filed with the

5

Court. *Id.* at 2. Thus, PDSI knew of these persons as potential witnesses. Second, PDSI listed Mr. Davidson as its own employee, and he was identified in its initial disclosures and the Disclosure of Lay Witnesses. *Id.* Thus, it cannot claim to be surprised by his "involvement and knowledge of the facts at issue in this case or any prejudice as a result of S-S calling him as a witness." *Id.* Third, in an expert witness disclosure to PDSI's attorney on May 29, 2014, S-S identified each of the witnesses in question (except for Mr. Davidson) as an expert that would also be testifying as a fact witness, which complied with the disclosure deadline under Rule 26(a)(2)(C) for such "hybrid" witnesses. After this disclosure, PDSI deposed each of them and asked each one "questions as to his involvement and knowledge of the facts at issue in this case." Finally, with the exception of Mr. Davidson, PDSI listed all the witnesses in question as persons it intends to call to testify at trial. Thus, its claims of prejudice are "disingenuous."

PDSI filed a Reply Brief on August 18, 2015. Doc. #62. Therein, PDSI counters S-S's Response with the following points. First, the Rule 26(a)(1) disclosures and interrogatory responses only provided notice that the persons in question had information relevant to the case, not that S-S intended to call them as witnesses. *Id.* at 2. Second, the wording of S-S's May 29, 2014, disclosure led PDSI to believe that the only facts that they would be testifying to would be those that formed the basis for their expert opinions, and it only deposed them as such. *Id.* PDSI states that "it is a mischaracterization" by S-S to suggest that the

6

depositions PDSI conducted concerned anything other than the witnesses' expert opinions. *Id.* at 2-3. Third, even though PDSI itself disclosed Mr. Davidson as a lay witness, it relied upon S-S's failure to disclose him an intended lay witness when it made the decision not to depose him. *Id.* at 3-4. Finally, PDSI asserts that it is "unprepared to proceed if S-S is permitted to call lay witnesses at trial," because it has not deposed Mr. Davidson or conducted "depositions of any lay witness testimony S-S intends to offer through employees it has disclosed as experts." *Id.* at 4. PDSI would, therefore, suffer prejudice if the witnesses S-S has identified are permitted to testify as lay witnesses at trial. *Id.* at 5.

On August 18, 2015, S-S filed a Sur-Reply to PDSI's Reply. Doc. #63-1. Therein, S-S contests PDSI's assertion that S-S did not identify any lay witnesses in its initial disclosures under Rule 26(a)(1). *Id*. S-S points the statement in its initial disclosures that it "reserves the right to call witnesses identified by Plaintiff" as evidence of having timely disclosed its intention to call the witnesses it recently identified in the Joint Pretrial Order, because PDSI named them in its identification of lay witnesses. *Id.* at 1-2. S-S also asserts that PDSI's motion is actually an untimely filed Motion in Limine, because it was filed after the deadline for pretrial motions. *Id.* at 2. However, S-S states that it would be willing to agree to an extension of the trial date in order to make the witnesses available to PDSI for further depositions as an accommodation to prevent the exclusion of their testimony at trial. *Id.*

7

III.     **ANALYSIS**

Rule 26(a)(1)(A)(i) of the Federal Rules of Civil Procedure imposes a mandatory obligation on each party to initially disclose the identity of "each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses[.]"  Initial disclosures must be made at the beginning of litigation, "without awaiting a discovery request" from the opposing party, and must occur within 14 days of the discovery planning conference that the parties must conduct under Rule 26(f).  Fed. R. Civ. P. 26(a)(1)(A) & (C).

The parties have a separate obligation to provide pretrial disclosures of the evidence and witnesses they intend to present at trial.  Parties must disclose the identities of the expert witnesses they intend to call at trial, and must do so either 90 days before trial or "at the times . . . that the court orders."  Fed. R. Civ. P. 26(a)(2)((D).  A separate obligation exists for the disclosure of lay witnesses.  Rule 26(a)(3)(A)(i) states that "[i]n addition to the disclosures required by Rule 26(a)(1) . . . a party must provide to the other parties and promptly file" disclosures of "information about the evidence that it may present at trial," including the "name . . . of each witness . . . the party expects to present and those it may call if the need arises" at trial.

The Court's General Order No. 1 elaborates on the purpose of these disclosures:

> The purpose of witness lists and expert reports and disclosures is to permit the opposing party to determine if deposing the expert is

8

necessary and to prepare for that deposition. Lists of witnesses are to be final lists of those intended to be called at trial, not preliminary lists of those who may have relevant information. The purpose of this filing of witness lists is to permit timely completion of discovery. Supplementation of the lists after filing will be only upon a showing of good cause, i.e., that the identity of the witness and/or the need for the witness's testimony could not have been previously determined upon the exercise of due diligence by counsel.

Rule 37(c) describes consequence of failing to disclose a witness:

If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

The Advisory Committee Notes state that Rule 37(c) "provides a self-executing sanction for failure to make a disclosure required by Rule 26(a), without need for a motion" to compel disclosure. Rule 37(c)(1) "requires absolute compliance with Rule 26(a)," in the absence of some showing that the failure to comply was substantially justified or harmless. *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003). The Sixth Circuit places "the burden on the potentially sanctioned party to prove harmlessness." *Id.*

The Court first turns to the issue of whether it should exclude the testimony of Mr. Davidson. S-S points out that Mr. Davidson's name appeared on both parties' Rule 26(a)(1) initial disclosures, PDSI itself named him in its Rule 26(a)(3) Disclosure of Lay Witnesses, and PDSI was aware that he had involvement and knowledge of the facts of this case because he was its employee at one time. Thus, S-S claims that PDSI would not be prejudiced by allowing Mr. Davidson to testify. "Harmlessness, however, is the key under Rule 37, not [the lack of]

9

prejudice." *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003).[2]  The Advisory Committee Note to Rule 37 elaborates on the "harmlessness" standard:

> Limiting the automatic sanction to violations "without substantial justification," coupled with the exception for violations that are "harmless," is needed to avoid unduly harsh penalties in a variety of situations: *e.g.*, the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties; the failure to list as a trial witness a person so listed by another party; or the lack of knowledge of a pro se litigant of the requirement to make disclosures.

Fed. R. Civ. P. 37, Advisory Committee's Note to 1993 amendment (emphasis added).

It is clear from the language of the Advisory Committee Note that the concern is whether the party had knowledge of the existence of the witness. In the absence of bad faith, nondisclosure of witnesses is harmless where the other party knows "the names of its witnesses and the scope of their relevant knowledge well before trial." *Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153, 156 (3d Cir. 1995) (affirming district court's refusal to exclude the testimony of witnesses not named in Rule 26(a)(1) disclosures and omitted from interrogatories when their identities and scope of their knowledge was known

---

[2] The Sixth Circuit draws a conceptual distinction under Rule 37 between harmlessness and a lack of prejudice. *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003). Black's Law Dictionary defines prejudice as "damage or detriment to one's legal rights or claims." Any difference between the "harm" and "damage" to a party's rights seems to be one of form and not substance. However, the distinction may be meant to emphasize the burden of proof under Rule 37. Because of its "automatic sanction," the movant does not need to demonstrate that it suffered prejudice. Rather, it is "the burden [of] the potentially sanctioned party to prove harmlessness." *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003).

to opposing party). Here, Mr. Davidson's name was first on the list provided by PDSI when it filed its Disclosure of Lay Witnesses filed on January 29, 2014. Doc. #12 at 1. Although S-S failed to list Mr. Davidson as a trial witness, he was "a person so listed by another party." Furthermore, both parties listed Mr. Davidson in their Rule 26(a)(1) initial disclosures, and S-S expressly stated that it "reserve[d] the right to call witnesses identified by Plaintiff, as well as agents of Plaintiff on cross-examination" when it sent its initial disclosures to PDS on November 27, 2013. Doc. #63-1. The Court certainly disapproves of the fact that S-S ignored its responsibility to comply with the lay witness disclosure requirement of Rule 26(a)(3), and questions its decision to affirmatively express its intention to call Mr. Davidson as a witness so close to trial. Nevertheless, both parties' reference to him in their initial disclosures and S-S's reservation of the right to call any of those persons as a witness demonstrates that PDSI had notice from the beginning of this litigation that Mr. Davidson was a potential witness. Furthermore, Mr. Davidson was PDSI's employee, and it is unquestionable that it was familiar with scope of his knowledge relevant to both its claims and S-S's defenses.[3] *See Smith v. Pfizer*, 265 F.R.D. 278 (M.D. Tenn. 2010) (excluding witnesses because their knowledge

---

[3] PDSI contends that S-S's decision to offer Mr. Davidson "smacks of ambush" because of his alleged status as a disgruntled former PDSI employee who harbors "animosity" against the company. While PDSI's contentions are aimed at the prejudice it would suffer if Mr. Davidson is allowed to testify, such can be fully explored by its cross-examination of said witness at trial. *See* Fed. R. Evid. 611(b) (including "matters affecting the witness's credibility" within the permissible scope of cross-examination); *United States v. Clark*, 988 F.2d 1459, 1464 (6th Cir. 1993) (identifying "motivation in testifying and possible bias" as a "proper area of inquiry on cross-examination").

of relevant facts was not known to the movants, but refusing to exclude other witnesses because the movants "did have knowledge regarding the information possessed by their own employees and representatives"). Under these circumstances, the exclusion of his testimony would be the type of unduly harsh penalty that the Advisory Committee counsels against.

With regards to the other witnesses in question, the Court disagrees with PDSI's contention that their status as fact witnesses was never disclosed by S-S. In a letter dated May 29, 2014, S-S identified them as expert witnesses, but also made the following statements:

> Defendant expects the following witnesses to testify <u>as experts</u> regarding engineering, mechanical engineering, conveyor systems, conveyor systems controls, conveyor systems software and industry practices regarding design, redesign and warranty work.
>
> Defendant expects the following [identical] witnesses to testify <u>as to the facts</u> regarding the specifications, design, installation and configuration <u>of the conveyor system at issue</u>, <u>as well as actions taken after problems arose</u>.

Doc. #60-1 (emphasis added).

This letter was sent on May 29, 2014, the deadline set forth in the Scheduling Order for disclosing expert witnesses, and over a year before trial. Doc. #8 at 2. It was, therefore, timely. *See* Fed. R. Civ. P. 26(a)(2)((D) (requiring expert witness disclosures either 90 days before trial or "at the times . . . that the court orders").

More importantly, the language of the disclosure makes clear that the scope of the testimony of S-S's witnesses would encompass the "facts" regarding the

12

particular conveyor system "at issue," and the facts that occurred after its alleged malfunction.  Based on this language, PDSI was clearly on notice that S-S's experts intended to testify regarding disputed facts in the case.

Finally, even if PDSI believed that the scope of the testimony offered by S-S's witness was constrained by their status as experts, a cursory review of the deposition transcripts shows that PDSI's attorneys freely questioned each of them about their personal knowledge of facts outside the scope of such expertise.  PDSI's attorney asked Craig Kenny if he had "any information about PDSI's relationship with Honda," or if he was "aware of anything S-S did that would have damaged PDSI's relationship with Honda Alliston?"  Kenny Dep. at 18-19 (Doc. #59 at 18-19).  Michael Birmingham was asked if he had "ever experience[d] any of [PDSI's] people being dishonest with [him]," and if he could "recall any instances" where PDSI's representative had "instructed [Birmingham's] supervisors to direct . . . [S-S] employees to do anything specifically with the installation of the conveyor?"  Birmingham Dep. at 9 & 25 (Doc. #55 at 9 & 25).  PDSI's attorney also asked Mr. Birmingham if "anyone from Honda [was] coming to [him] and saying, 'there is something wrong with the conveyor'," if he had "observe[d] any emergency stops of the conveyor," and if he had "personally observe[d] the installation of either disconnect box." *Id.* at 33, 39 & 50 (Doc. #55 at 33, 39 & 50).  When Mr. Birmingham's memory faltered, PDSI's attorney pressed him to admit the possibility that certain facts might have occurred:

13

> Q. And the cars were sitting on top of the conveyor, with associates staring at the cars and not able to work, right?
>
> A. I am not sure if the associates drove the cars off the side of the conveyor. I don't know.
>
> Q. Okay. That might have happened?
>
> A. Yes.

*Id.* at 63 (Doc. #55 at 63).

The deposition of James L. Thomas also reveals a number of factual queries. He was asked if he could "recall any instances specifically" when the conveyor malfunctioned, and was asked to describe "the financial relationship [] between Honda and Sutherland-Schultz for work that is performed at the Honda Alliston plant." Thomas Dep. at 19 & 85 (Doc. #53 at 19 & 85). He was also asked whether he had any "independent knowledge of any of the events" surrounding the alleged malfunctioning of PDSI's product. *Id.* at 95 (Doc. #53 at 95). Scott R. Kelly was asked if had any "personal involvement with the PDSI contract with Sutherland-Schultz," if he had "personally observed any part of the installation," and whether he had personally spoken to anyone at PDSI about the warranty provision in the parties' contract. Kelly Dep. at 9 & 15 (Doc. #15 at 9 & 15).

The foregoing survey of the depositions of S-S's witnesses by PDSI's counsel does not support the contention that the questioning was constrained in the manner PDSI asserts. Its attorney appears to have freely questioned the witnesses about their personal knowledge of facts in dispute in this matter, which contradicts PDSI's assertion that it "did not pursue discovery of lay witness

14

testimony from the individuals now listed by S-S" in the Joint Pretrial Order. Doc. #43 at 3. Thus, even if the Court had found that S-S did not properly disclose that its expert witnesses would be also testify regarding disputed factual issues, the harm that PDSI suffered is not at all apparent. This conclusion is bolstered by the fact that, in the arguments in support of its Motion to Strike, PDSI fails to describe the fact-based questions it would have asked, or what fact-based testimony it intentionally decided not to pursue during the depositions. Instead, PDSI expresses only general outrage about the timing of S-S's disclosures. Doc. #43 at 3 (describing "S-S's decision not disclose lay witnesses until August 12" as "severe misconduct" and "a flagrant and egregious disregard of this Court's discovery order"). While the Court agrees with PDSI that S-S did not comply with every deadline set in the Scheduling Order, the disclosures that S-S did provide put PDSI on sufficient notice of the identity of its witnesses and the nature of the testimony they would provide. For the foregoing reasons, PDSI's motion is overruled.

IV.   **CONCLUSION**

For the reasons set forth above, the Court finds that S-S's disclosure of its intent to offer Mr. Davidson as a lay witness, although untimely, was harmless. Furthermore, S-S's disclosure of the fact- and opinion-based nature of the testimony of its experts was not untimely, based the language of its May 29, 2014, letter that complied with the disclosure deadline. Accordingly, PDSI's

Motion to Strike Witnesses and Limit Witness Testimony (Doc. #43) is

OVERRULED.


Date: August 20, 2015                    /s/ Walter H. Rice
                                         WALTER H. RICE
                                         UNITED STATES DISTRICT JUDGE